FILED

14 JUN -6 AM 9:10

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID HENSLEY, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>EPPENDORF NORTH AMERICA, INC., a Delaware corporation,<br><br>Defendant. | CASE NO. 14-CV-419-BEN (NLS)<br><br>**ORDER GRANTING MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION AND NOTICE PURSUANT TO 29 U.S.C. § 216(b)**<br><br>[Docket No. 11] |

Before this Court is a Motion for Conditional Collective Action Certification and Notice Pursuant to 29 U.S.C. § 216(b). (Docket No. 11). For the reasons stated below, the Motion is **GRANTED**.

## BACKGROUND

On February 24, 2014, Plaintiff David Hensley (Hensley) filed a putative class action against his former employer, Defendant Eppendorf North America, Inc. (Eppendorf), asserting violations of state and federal labor laws.

Eppendorf is a Delaware corporation which manufactures laboratory instruments and consumables for life sciences. (Compl. ¶ 8). Eppendorf also provides support services, such as pipette calibration, instrument maintenance programs, and expedited repair. (*Id.*) Hensley worked for Eppendorf as a pipette calibration specialist and field pipette calibration specialist until his employment was terminated in August 2013. (*Id.*

1    ¶ 6).

2         Hensley asserts that Eppendorf misclassified him and other technicians as

3    "exempt" from labor laws and paid a yearly salary. (*Id.* ¶¶ 9-10). He asserts that he

4    and other technicians did not perform duties warranting exemption. (*Id.* ¶¶ 10-11).

5    Hensley asserts that they should have been classified as non-exempt, and paid an

6    hourly wage. (*Id.* ¶ 12). He contends that the technicians did not receive the minimum

7    wage for all hours worked, or overtime. (*Id.*) Hensley asserts that the technicians

8    should have received meal and rest breaks, and payments for unused vacation time.

9    (*Id.* ¶¶ 13-15). He also contends that the technicians were not provided with proper

10   wage statements, and that Eppendorf owes wages to terminated employees. (*Id.* ¶ 16).

11        In his Complaint, Hensley alleges seven violations of California state law on

12   behalf of putative classes consisting of certain current and former employees of

13   Eppendorf residing in California. (*Id.* ¶¶ 17, 24-60). These claims include alleged

14   violations of the California Labor Code and alleged unfair business practices within the

15   meaning of Section 172000 *et seq.* of the California Business & Professions Code. (*Id.*

16   ¶¶ 24-60). Hensley has also filed a motion to amend the complaint to add a claim

17   pursuant to the California Private Attorney General Act of 2004, CAL. LABOR CODE §§

18   2699 *et seq.* (Docket No. 12). The motion to amend remains pending.

19        At issue in the instant motion is Hensley's eighth claim for relief, which asserts

20   violations of the Fair Labor Standards Act (FLSA). (Compl. ¶¶ 61-67). He seeks to

21   bring the claim on behalf of a "Nationwide Class" containing:

22        All persons residing in the United States who are formerly or currently
          employed by Eppendorf North America, Inc. as a pipette calibration
23        specialist, field pipette calibration specialist, calibration technician, or in
          a similar position at any time since February 13, 2011.
24
     (*Id.* ¶ 17(a)).
25
          In his FLSA claim, Hensley asserts that Eppendorf required the Nationwide
26
     Class to work without compensation for all hours worked, work beyond forty hours per
27
     week without overtime compensation, or work at less than the minimum wage under
28
     29 U.S.C. §§ 206, 207(a)(1). (*Id.* ¶¶ 63-64). Hensley contends that the violations are

1  "willful and ongoing." (*Id.* ¶ 66). Hensley therefore seeks unpaid wages, including
2  overtime wages allegedly owed under 29 U.S.C. §§ 206 and 207. (*Id.* ¶ 67). He also
3  seeks liquidated damages, costs, interests, and reasonable attorneys' fees under 29
4  U.S.C. § 216(b). (*Id.*)

5        Hensley filed the instant Motion on April 15, 2014. Hensley asks this Court to
6  conditionally certify the class in regards to the FLSA claim. (Mot. at 1). He also asks
7  the Court to order Eppendorf to produce the names and other relevant information of
8  its current and former technicians. (*Id.*) Finally, he asks the Court to authorize and
9  order notice of the collection action to be sent to the current and former technicians.
10 (*Id.*) Eppendorf timely opposed the Motion on May 23, 2014. (Docket No. 13).
11 Hensley filed a reply. (Docket No. 16).

12 **LEGAL STANDARD**

13 A. Conditional Certification

14       The FLSA grants employees a private right of action to enforce the minimum
15 wage and overtime provision of the FLSA. 29 U.S.C. § 216(b). An action may be
16 brought by employees, not only on their own behalf, but also on behalf of "other
17 employees similarly situated." *Id.* Although the statute permits collective actions, the
18 statute requires employees to affirmatively opt-in by giving their consent in writing.
19 *Id.* Such consent is filed in the court where the action is brought. *Id.*

20       Determining whether a suit may be maintained as an FLSA collective action is
21 within the discretion of the district court. *Graham v. Overland Solutions, Inc.*, No. 10-
22 cv-672-BEN (BLM), 2011 WL 1769737, at *2 (S.D. Cal. May 9, 2011) (citing
23 *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 466 (N.D. Cal. 2004)). District
24 courts in the Ninth Circuit have consistently applied a two-step approach for
25 determining when employees are "similarly situated." *Id.* (citing *Reed v. Cnty. of*
26 *Orange*, 266 F.R.D. 446, 449 (C.D. Cal. 2010); *Lewis v. Wells Fargo & Co.*, 669 F.
27 Supp. 2d 1124, 1127 (N.D. Cal. 2009)). In the first step, the court makes an "initial
28 determination" about whether to conditionally certify the class for the purposes of

- 3 -

1    providing notice to potential members. *Id.* (citing *Leuthold*, 224 F.R.D. at 467). Later,
2    often after the close of discovery, the court re-evaluates certification and applies a more
3    stringent analysis. *Id.* Hensley's Motion concerns only the first step. (Mot. at 4).

4        The burden of demonstrating that the members of the proposed class are
5    similarly situated rests on the plaintiff. *Graham*, 2011 WL 1769737, at *2. However,
6    at the early notice stage, this standard is a "lenient one that typically results in
7    certification." *Hill v. R+L Carriers, Inc.*, 690 F. Supp. 2d 1001, 1009 (N.D. Cal. 2010)
8    (citation omitted). A plaintiff must provide "little more than substantial allegations,
9    supported by declarations or discovery, that 'the putative class members were together
10   the victims of a single decision, policy, or plan.'" *Id.* (citing *Thiessen v. Gen. Elec.
11   Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001)). A plaintiff must show that there
12   is "some factual basis beyond the mere averments in [his] complaint for the class
13   allegations." *Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 536 (N.D. Cal. 2007)
14   (citation omitted).

15       The showing required here is "considerably less stringent" than the showing
16   required under Federal Rule of Civil Procedure 23. *Hill*, 690 F. Supp. 2d at 1009. A
17   plaintiff need only show that "some identifiable factual or legal nexus binds together
18   the various claims of the class members in a way that hearing the claims together
19   promotes judicial efficiency and comports with the broad remedial policies underlying
20   the FLSA." *Id.* (quoting *Wertheim v. Ariz.*, No. CIV 92-453 PHX RCB, 1993 WL
21   603552, at *1 (D. Ariz. Sept. 30, 1993)). This is likely in recognition of the fact that,
22   unlike under Rule 23, there are no absent class members to protect. *Graham*, 2011 WL
23   1769737, at *2 (citing *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 263 n.17 (S.D.N.Y.
24   1997)). The leniency also likely reflects the fact that a limited amount of evidence is
25   available at this time. *See Adams*, 242 F.R.D. at 536 (citing *Leuthold*, 224 F.R.D. at
26   467).

27   ///
28   ///

B. Notice

In order to reap the benefits of a collective action, the employees must receive "accurate and timely notice concerning the pendency of the class action, so they can make informed decisions about whether to participate." *See Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). Courts in FLSA collective actions have "the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure." *See id.* They are therefore empowered to order the production of employee information and authorize notice. *See id.* at 169-74.

## DISCUSSION

A.  Similarly Situated

Hensley contends that the members of the proposed class are similarly situated because they share similar job duties and are all subject to the same company-wide policy that classified them as exempt. (Mot. at 5).

In arguing that the class members have similar job duties, Hensley submits a declaration in which he discusses his own job duties, and shares his observations regarding other technicians. (Hensley Decl., Docket No. 11-3) Hensley was hired as a Pipette Calibration Specialist, but was promoted to Field Pipette Calibration Specialist before he completed his training. (*Id.* ¶¶ 3, 4). He was sent to San Diego, California to work for an Eppendorf client. (*Id.* ¶ 4). He states that he was typically scheduled to work 37.5 hours per week, but was often required to work more than 40 hours per week without receiving overtime. (*Id.* ¶¶ 6-7).

Hensley provides a description of his own "main responsibility and daily tasks." (*Id.* ¶ 8). Hensley also attaches copies of the job descriptions, signed by Hensley and a supervisor, for the pipette calibration specialist and field pipette calibration specialist positions. (*Id.*, Ex. 2). These documents discuss information such as the necessary qualifications and skills, duties and responsibilities, and work environment.

14cv419

1       Hensley also states that he received training materials and manuals that
2   instructed technicians in how to handle their assigned tasks. (*Id.* ¶ 13). He has
3   submitted examples of such documents in support of the Motion. (*Id.*, Ex. 3). He
4   states that, based on "personal observations of Eppendorf's operations," other
5   technicians used these and similar procedural documents that directed them in how to
6   do their jobs. (*Id.* ¶ 14). He asserts that both he and others were subject to discipline
7   for deviating from the procedures. (*Id.*)

8       Hensley declares that he has "spoken with and worked with other pipette
9   calibration specialists, field calibration specialists, calibration technicians, and other
10  employees in similar positions." (*Id.* ¶ 17). He "observed" that their job duties were
11  similar and asserts that the other technicians also relied on the manuals. (*Id.*) Based
12  on "personal observations of Eppendorf's operations" during his employment, he states
13  that he learned that other technicians were subject to discipline for deviating from
14  company policies and procedures. (*Id.* ¶ 18) He also declares that based on "personal
15  observations of Eppendorf's operations," he learned that other technicians were
16  classified as exempt, received a yearly salary, and did not receive overtime
17  compensation. (*Id.* ¶ 19).

18      Hensley also alleges that the technicians were "uniformly classified" as exempt
19  and paid a yearly salary, and did not receive overtime. (Mot. at 5) He points to his
20  own observations and to allegations in the Complaint. (Hensley Decl. ¶¶ 5, 6, 19;
21  Compl. ¶ 9). He also submits a section of the employee handbook, which states that
22  exempt employees are not eligible for overtime pay. (Hensley Decl., Ex. 1 at 3).

23      i. Judicial Economy

24      Eppendorf argues that conditional certification will not promote judicial
25  economy. It contends that there are approximately 40 people in the putative class and
26  it is likely that few will decide to opt-in. (Opp'n at 5-6). It further argues that Hensley
27  has failed to demonstrate that any of the putative class members are interested in
28  joining the lawsuit. (*Id.*)

An FLSA collective action is not subject to Federal Rule of Civil Procedure 23 requirements. *Hill*, 690 F. Supp. 2d at 1009. Eppendorf has cited no persuasive authority requiring Hensley to make a showing that putative class members will be interested in joining the lawsuit. The only authority cited from this Circuit is a District of Oregon order in a case in which there was a demonstrated *lack* of interest from putative class members. *Hargrove v. Sykes Enters., Inc.*, No. 99-110-HA, 1999 WL 1279651, at *4 (D. Or. June 30, 1999) (denying conditional certification for the additional reason that only 7 of 332 former employees had responded to letters).

Eppendorf also cites to an Eleventh Circuit opinion requiring a district court to satisfy itself that there are other employees who desire to opt in and are similarly situated. *Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991). However, Eppendorf points to no authority in this Circuit adopting the *Dybach* requirement. Upon examining the opinion in *Dybach* and the other out-of-circuit caselaw cited by Eppendorf, this Court agrees with other district courts in this Circuit that a plaintiff is not required to demonstrate opt-in interest. *See Guy v. Casal Inst. of Nev., LLC*, No. 2:13-cv-2263-APG-GWF, 2014 WL 1899006, at *4-5 (D. Nev. May 12, 2014) (rejecting a requirement that plaintiffs show that putative class members desire to opt in and noting the *Dybach* requirement has not been applied by district courts in the Ninth Circuit); *Mowdy v. Beneto Bulk Transp.*, No. C 06-05682 MJP, 2008 WL 901546, at *7 (N.D. Cal. Mar. 31, 2008) (rejecting requirement that plaintiffs demonstrate opt-in interest and noting that defendants would have the opportunity to challenge certification at the second stage); *Delgado v. Ortho-McNeil, Inc.*, No. SACV 07-263 CJC (MLGx), 2007 WL 2847238, at *2 (C.D. Cal. Aug. 7, 2007) (rejecting *Dybach* and finding that a plaintiff is not required to demonstrate that others seek to participate). The Eleventh Circuit did not explain why it imposed this requirement. *See Dybach*, 942 F.2d at 1567-68. Other courts have noted that this requirement is rarely applied outside of the Eleventh Circuit, and that it appears to conflict with the Supreme Court's position that the FLSA should be liberally applied. *E.g., Delgado,*

14cv419

1    2007 WL 2847238, at *2. Furthermore, requiring a showing of interest makes little

2    sense given that the purpose of conditional certification is to give notice to potential

3    plaintiffs in the first place. *See Mowdy*, 2008 WL 901546, at *7 ("As a practical matter

4    it would make little sense to require plaintiffs to have the knowledge they attempt to

5    obtain by gaining approval of notice from the court.").

6         Eppendorf does not seriously call into question the potential judicial economy

7    of this action. A single collective action may well be an efficient way to handle forty

8    claims if they are related. It is also difficult to determine how many employees will opt

9    in. Although it is certainly true that members of an opt-in class may not to opt in for

10   a variety of reasons, each circumstance is different. Additionally, Hensley disputes the

11   number of class members. (Reply at 1). This Court will not deny conditional

12   certification based on the employer's self-serving claims regarding the number of class

13   members, where the basis for this claim has not been presented and cannot be

14   challenged by the opposing party.

15        Finally, certification at this stage is only conditional. This Court can re-examine

16   a conditionally certified class at a later stage. At that point, the Court could de-certify

17   the class if appropriate. *See Mowdy*, 2008 WL 901546, at *7.

18        ii. Showing of Institution Wide Practice or Similarities Between Putative

19        Plaintiffs

20        Eppendorf contends that this court should consider whether there is evidence that

21   the alleged wrongdoing was part of an institution-wide practice and the extent of the

22   similarities among the members of the proposed collective action. (Opp'n at 7 (citing

23   *Trinh v. JP Morgan Chase & Co.*, No. 07-cv-1666-W (WMC), 2008 WL 1860161, at

24   *3 (S.D. Cal. 2008))). Eppendorf states that Hensley cannot rely on unsupported

25   assertions of violations, speculation, and generalized allegations. (*Id.* at 7-9). It

26   contends that Hensley has not put forward sufficient support.

27        This Court has carefully examined the support offered by Hensley. As discussed

28   above, Hensley offers a declaration regarding his own experience, and discusses his

1  observations during his tenure at Eppendorf.[1] His discussion of his observations does

2  not include details such as names, places, or dates. There are no declarations from

3  other potential plaintiffs regarding the experience of individuals with other job titles.

4  However, Hensley also provides manuals and job descriptions he received while

5  working at Eppendorf. Hensley also argues that he does not need to show that the job

6  positions are identical, only that the class members hold "similar positions." (Mot. at

7  5 (citing *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996) (citing

8  *Sperling v. Hoffman-LaRoche*, 118 F.R.D. 392, 407 (D.N.J. 1988), *aff'd in part and*

9  *appeal dismissed in part*, 862 F.2d 439 (3d Cir. 1988), *aff'd, Hoffman-LaRoche, Inc.*

10  *v. Sperling*, 493 U.S. 165 (1989)))).

11       The Court concludes that Hensley has made a sufficient showing. The first step

12  of FLSA collective action certification is lenient, in light of the limited amount of

13  evidence available at this time. *Adams*, 242 F.R.D. at 536 (citing *Leuthold*, 224 F.R.D.

14  at 467). Hensley must show that there is "some factual basis beyond mere averments

15  in [his] complaint for the class allegations." *Id.* Hensley has put forward sufficient

16  support for his allegations to satisfy the requirements of the first stage. Hensley has

17  described his own experience in his declaration, and provides copies of company

18  documents discussing company procedures and job descriptions. The documents

19  provided by Hensley indicate the presence of company-wide policies. They appear to

20  be general documents, and do not show signs of tailoring for a particular employee.

21  He asserts that he had an opportunity to personally observe company operations, and

22  that he spoke with and worked with other technicians. Hensley offers his personal

23  observations regarding other employees concerning matters that are readily observable,

24

---

25      [1]Eppendorf raises several objections to the declaration and supporting

26  documents. (Docket No. 13-1). This Court has carefully reviewed the objections, and
**OVERRULES** them to the extent not inconsistent with this Order. *See Davis v. Soc.*

27  *Serv. Coordinators, Inc.*, No. 10-cv-2372-LJO-SKO, 2012 WL 5361746, at *9-10 (E.D. Cal. Oct. 30, 2012) (evidentiary standards relaxed in context of motion for conditional

28  class certification under Section 216(b)). The Court notes that to the extent Eppendorf points to the lack of certain detail and facts in the declaration, this Court has taken them into consideration in weighing the sufficiency of Hensley's showing.

1    such as how the employees generally spend most of their time. The Court notes that

2    the declaration of Marcela Sanclemente submitted in opposition does not call into

3    question the fact that such technicians perform many of the same tasks, and do so in

4    compliance with company procedures. (Sanclemente Decl., Docket No. 13-2) It also

5    does not dispute that all such employees are classified as exempt. (*Id.*)

6         In opposing the Motion, Eppendorf points to a number of district court cases in

7    which courts found the factual support insufficient for certification. This Court has

8    examined those decisions. In exercising their discretion with regard to conditional

9    certification, courts examine the particular circumstances and allegations before them

10   to determine whether the plaintiff has made a sufficient showing. The extent and type

11   of proof required to meet the burden will necessarily vary with the situation. *See Wynn*

12   *v. Nat'l Broad. Co., Inc.*, 234 F. Supp. 2d 1067, 1081 (C.D. Cal. 2002) ("A

13   determination of whether proposed class members are 'similarly situated' is a fact-

14   specific one.") (citation omitted). Eppendorf cites repeatedly to a Southern District of

15   California order in *Trinh v. JP Morgan Chase & Co*, No. 07-cv-1666-W (WMC), 2008

16   WL 1860161 (S.D. Cal. 2008). There, the district court found that the plaintiff offered

17   no real evidence beyond speculative beliefs regarding the claims that all loan officers

18   had the same compensation and worked in the same manner. *Id.* at *4. The court

19   concluded that they had not satisfied the "modest factual showing" required. *Id.* By

20   contrast, Hensley offers his own observations of actual working conditions based on

21   his tenure at Eppendorf, and proffers company documents. Although not definitive,

22   he offers more than mere speculation regarding the experience of others.

23        The Sanclemente Declaration also appears to state facts to support an argument

24   that there are significant differences between the working conditions of the putative

25   class members, and that Hensley's work experience was different from other

26   employees. (Sanclemente Decl. ¶¶ 4-9). However, the existence of certain

27   dissimilarities would not negate the factual nexus that binds Hensley and the putative

28   class members. *See Graham*, 2011 WL 1769737, at *2. Additionally, making

1   determinations about differences in working conditions and their relevance to this

2   action threatens to require this Court to improperly and prematurely determine the

3   merits.  *See Adams*, 242 F.R.D. at 539 (declining to consider the merits).

4          Determining whether such considerations render collective action treatment

5   improper is an appropriate inquiry to conduct at the second stage, following discovery.

6   This Court cannot properly determine whether the employees are sufficiently similarly

7   situated to proceed collectively to trial without a more complete factual record.  This

8   Court will not make such a determination based on disputed facts, where the employee-

9   plaintiff has not yet had a chance to obtain fair discovery that is likely needed to

10  respond.  During the second stage, this Court will be able to properly consider several

11  factors, including the "disparate factual and employment settings of the individual

12  plaintiffs," "the various defenses available to defendant which appear to be individual

13  to each plaintiff," and fairness and procedural considerations.  *See Thiessen*, 267 F.3d

14  at 1103.

15         Upon review of the full record, the Court determines that Hensley has provided

16  sufficient factual support for his class allegations.  The showing supports his claims

17  that the employees in question performed similar tasks and were subject to the same

18  company policies.  Hensley has satisfied the lenient standard for initial certification.

19  After appropriate discovery has taken place, this Court will conduct a more stringent

20  analysis at the second stage.

21         iii.  Common Proof

22         Eppendorf also contends that Hensley has not shown that the putative plaintiffs

23  will rely on common proof.  Where there is no contention that common evidence will

24  be relied upon, at least one district court has found that a court may determine that

25  collection action treatment will be inappropriate at the first stage.  *Trinh*, 2008 WL

26  1860161, at *4-5.

27         However, Hensley argues that he seeks evidence of common proof through

28  discovery, and that it would be premature to require him to present such evidence at

1   this time. (Reply at 7-8). Hensley has put forward enough factual support for his
2   allegations to indicate that there is a factual nexus between the putative plaintiffs and
3   that some degree of common proof can be used. Discovery has not yet concluded in
4   this matter and Hensley has not yet been able to try to obtain evidence which may serve
5   as common proof. The Court notes that it is plausible that Hensley can obtain relevant
6   documentation about Eppendorf's employment policies, such as job descriptions or
7   exemption-related policies, that would allow for a measure of common proof. This
8   Court lacks the factual record necessary to determine the extent to which the putative
9   class would use common proof. This Court certainly cannot conclude on the current
10  record that these claims cannot be determined using common proof, and that a
11  collective action will therefore not serve judicial economy.

12      Eppendorf also points to the need to conduct a fact-specific analysis with regard
13  to each plaintiff. It cites to authority stating that classification cases involve an
14  individualized inquiry into the nature of each plaintiff's job duties. (Opp'n at 11
15  (citing *Trinh*, 2008 WL 1860161, at *4-5)). However, the likely need for some
16  individual analysis does not automatically defeat conditional certification. At the
17  outset, a determination regarding the importance of any individual analysis can be more
18  accurately made after discovery has provided more information about potentially-
19  relevant factors, such as the degree of differences in tasks and working conditions. As
20  noted above, the disparate factual and employment settings of the individual plaintiffs
21  are appropriately considered at the second stage. *Thiessen*, 267 F.3d at 1103. The
22  consideration of circumstances personal to each employee may also ultimately go to
23  the individual calculation of damages. *See Graham*, 2011 WL 1769737, at *2.

24      iv. Conclusion

25      Upon full consideration of the record, this Court finds that conditional
26  certification is appropriate at the first stage. Hensley has provided substantial
27  allegations supported by sufficient facts. However, this certification is a preliminary
28  determination made applying a lenient standard appropriate before discovery.

1    B.  Providing Notice

2            Hensley asks this Court to order Eppendorf to produce the name, last known

3    address, telephone number, dates of employment, location of employment, and

4    employee identification number for each employee in the class.  Eppendorf does not

5    dispute this Court's power to order that notice be given, and does not object to either

6    the time line or the content of the proposed notice.  This Court has reviewed the

7    information requested, and finds that the request is reasonable.  *See Graham*, 2011 WL

8    1769737, at *3 (approving a list with the same details).

9            Eppendorf asks that this Court order Hensley to use a third-party claims

10   administrator to give notice.  It asserts that it seeks to protect the privacy of employees,

11   and suggests that this Motion was brought in order to obtain early discovery.  (Opp'n

12   at 13-15).  It further asks for a delay to allow putative plaintiffs to object to the

13   disclosure.  (*Id.* at 15 n.3).  The Court determines that there is no need to require that

14   notice be sent through a third party and there is no need to delay the release of

15   infromation to permit the employees to object.

16           Although California provides some privacy protections, such protections are not

17   absolute.  *See Ragge v. MCA/Universal Studios*, 165 F.R.D. 601, 604-05 (C.D. Cal.

18   1995) (finding importance of information in personnel files outweighs any privacy

19   interests where requests was sufficiently narrowed); *Pioneer Elecs. (USA), Inc. v.*

20   *Super. Ct.*, 40 Cal. 4th 360, 370-73 (2007).  Both federal and California state courts

21   have approved the production of information about potential class members.  *Hoffman-*

22   *La Roche*, 493 U.S. at 170 (district court correct to permit discovery of names and

23   addresses of discharged employees in 29 U.S.C. § 216(b) action); *Pioneer Elecs.*, 40

24   Cal. 4th at 373.  Courts have concluded that when the disclosure of information does

25   not involve particularly sensitive information, no serious invasion of privacy occurs,

26   and that the disclosure of "mere contact information, such as names and addresses, does

27   not unduly interfere with one's right to privacy."  *Tomassi v. City of Los Angeles*, No.

28   CV 08-1851, 2008 WL 4722393, at *3 (C.D. Cal. Oct. 24, 2008) (discussing *Pioneer*

1  *Elecs.*). Some California courts, including those cited by Eppendorf, have taken into
2  consideration whether the putative class members had an opportunity to object to the
3  release of information. *See Pioneer Elecs.*, 40 Cal. 4th at 373 (concluding that there
4  was no serious invasion of privacy where disclosure of the identity of potential class
5  members did not involve revelation of personal or business secrets, intimate activities,
6  or similar private information, and threatened no undue intrusion into their personal
7  lives).

8       Eppendorf fails to cite to case law requiring that an opportunity to object be
9  given in all circumstances. It cites to two California Court of Appeal cases. (Opp'n
10  at 15 n.3). *Life Technologies Corp. v. Superior Court*, 197 Cal. App. 4th 640, 656 (1st
11  Dist. 2011), involved the information of third parties and former employees who were
12  not putative plaintiffs in a collective action. *Belaire-West Landscape, Inc. v. Superior
13  Court*, 149 Cal. App. 4th 554, 561-63 (2d Dist. 2007), concluded that there was no
14  violation of privacy where the employees were permitted an opportunity to object.
15  However, Eppendorf fails to point to a case in which a court was required to provide
16  such an opportunity in order to protect privacy rights. Eppendorf further fails to
17  provide authority which indicates that Eppendorf would face liability for complying
18  with this Court's order. Furthermore, there is also a general concern with allowing an
19  employer to solicit opt-outs from employees. *See Camp v. Alexander*, No. C-13-3386
20  (EDL), 2014 WL 1476699, at *4, 10 (N.D. Cal. Apr. 15, 2014) (requiring information
21  be provided to all putative class members, even those who signed an opt-out
22  declaration).

23       This Court has considered the nature of the information requested and Hensley's
24  need for the information requested. The Court concludes that, under the circumstances,
25  production of the information is not a serious invasion of the putative class members'
26  privacy interests. To the extent Eppendorf seeks to restrict the use of information in
27  order to protect the privacy concerns of its employees, such concerns may be addressed
28  by a protective order. Accordingly, **no later than seven (7) days after the entry of**

1 **this Order**, the parties shall submit a proposed protective order to Magistrate Judge
2 Nita L. Stormes that complies with the Civil Case Procedures for Judge Stormes. The
3 parties should contact the chambers of Judge Stormes regarding any questions
4 concerning the submission of the proposed protective order.

5     Requiring a third party administrator to send notice would likely complicate the
6 notice process and generate additional expenses. This Court sees no compelling reason
7 to impose additional, unusual requirements on Hensley in giving notice. Eppendorf
8 provides no support for its allegation that Hensley is misusing this Motion to obtain
9 discovery. Hensley points to the fact that the statute of limitations will run on potential
10 plaintiffs' claims until they file a consent with the Court. 29 U.S.C. §§ 216(b), 256.
11 Hensley has therefore provided a plausible explanation for its routine motion for
12 conditional certification.

13 **CONCLUSION**

14     Hensley's motion for conditional certification is **GRANTED**. Accordingly, the
15 Court **ORDERS** as follows:

16     (1) The Court conditionally certifies a collection action consisting of:

17
18 All persons residing in the United States who are formerly or currently employed by Eppendorf North America, Inc. as a pipette calibration specialist, field pipette calibration specialist, calibration technician, or in
19 a similar position at any time since February 13, 2011.

20     (2) Hensley is ordered to provide notice to the members of the collective action,
21 as defined above.

22     (3) Eppendorf is ordered to produce to Hensley in Microsoft Excel or
23 comparable format, within **10 days of entry of this Order**, the name, last known
24 address, telephone number, dates of employment, location of employment, and
25 employee identification number (not social security number) of all individuals in the
26 collective action known as of the date of this Order (the "Collective Action List").

27     (4) The Court approves the mailing of a Notice conforming to the proposed
28 Notice in Exhibit A to the Motion. The Court approves the mailing of a Consent to

1   Join form which conforms to Exhibit B.  Within 20 days of the entry of this Order,

2   Hensley shall mail copies of the Notices and Consent to Join forms to all individuals

3   on the Collective Action List.  Within 50 days of entry of this Order, Hensley shall mail

4   a reminder postcard to individuals who have not returned the Consent to Join forms.

5       (5)  The collection action members shall be permitted to submit Consent to Join

6   forms until 70 days after the date of mailing of the Notices.  The Consent to Join form

7   must be postmarked if submitted by mail, and received if submitted by email or fax,

8   within 70 days from the date of the mailing of the notices.

9       (6)  Pending the issuance of a protective order, Hensley is barred from using the

10  information produced by Eppendorf pursuant to this Order to contact individuals on the

11  Collective Action List for any purpose other than the notice and reminder authorized

12  above.

13      **IT IS SO ORDERED**.

14

15  Dated: June 5, 2014

16                      HON. ROGER T. BENITEZ
                    United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

14cv419